# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **AMLIN CORPORATE INSURANCE, ET. AL** | **CIVIL ACTION** |
| **VERSUS** | **NO: 11-1417** |
| **GREEN ARROW M/V, ET AL.** | **SECTION: "H"(5)** |

## ORDER AND REASONS

Before the Court are the following two Motions: (1) Motion for Dismiss for Lack of Personal Jurisdiction, or in the Alternative, Motion to Dismiss for Failure to State a Claim, or in the Alternative, Motion to Stay filed by Defendant Global Maritime Trust Pte. Ltd. ("Global Maritime") (R. Doc. 21); (2) Motion to Stay, or in the Alternative, Motion for Summary Judgment filed by Sangamon Transportation Group ("Sangamon Transportation") (R. Doc. 22) (collectively "Moving Parties").

The Motions are GRANTED insofar as the Court orders that all proceeding in this case be

STAYED pending resolution of arbitration proceedings in London. The Motions for alternative relief are DENIED WITHOUT PREJUDICE to be reurged, if necessary, at a later date. The Court shall retain jurisdiction and this case shall be restored to the trial docket upon motion of a party once arbitration has concluded.

**BACKGROUND**

This maritime case involves alleged damage to a cargo of corn carried aboard the M/V GREEN ARROW from Myrtle Grove, Louisiana, to Guanta, Venezuela. Cargill Americas, Inc. ("Cargill"), the shipper of the cargo, and Amlin Corporate Insurance ("Amlin"), the insurer of the cargo, seek damages of approximately $353,000. The liability of Defendants is premised on a series of charter agreements, summarized below.

Defendant Gulfwind Shipholdings S.A. ("Gulfwind Shipholdings")—owner of the GREEN ARROW—chartered the vessel to Yayla Shipping Istanbul Turkey ("Yayla Shipping") on December 23, 2009. Yayla Shipping in turn chartered the vessel to Global Maritime on January 14, 2010. Global Maritime then chartered the vessel to Sangamon Transportation on March 26, 2012. Finally, Sangamon Transportation chartered the vessel to Cargill on April 20, 2012, for the voyage at issue in this case.

The charter agreements all contain similar arbitration clauses. Cargill's charter with Sangamon Transportation calls for the application of English law to and arbitration in London of

2

"[a]ll disputes arising out of or relating to this contract." (R. Doc. 21, Ex. B.) Likewise, the Global Maritime-Sangamon Transportation charter provides that "[a]ll disputes arising out of or under this contract which cannot be amicably resolved shall be referred to arbitration in London." (*Id.*, Ex. F.) This agreement also calls for the application of English law. (*Id.*) The Yayla Shipping-Global Maritime charter (*id.*, Ex. C) and Gulfwind Shipholdings-Yayla Shipping charter (*id.*, Ex. D) contain arbitration and choice-of-law clauses identical to those in the Global Maritime-Sangamon Transportation charter.

On June 16, 2011, Plaintiffs filed a Complaint against the M/V GREEN ARROW *in rem*, and Gulfwind Shipholdings, Sangamon Transportation, Global Maritime, and Strand Management S.A. ("Strand Management"), *in personam*, alleging negligence, breach of contract, breach of warranty, and unseaworthiness. (R. Doc. 1.) On October 23, 2012, Global Maritime moved to dismiss the Complaint for lack of personal jurisdiction, failure to state a claim upon which relief can be granted, or alternatively to stay litigation in this Court pending arbitration in London. (R. Doc. 21.) On the same day, Sangamon Transportation moved to stay litigation in this Court, or alternatively for summary judgment. (R. Doc. 22.) Plaintiffs opposed the Motions on November 13, 2012 (R. Docs. 32; 33), and the Moving Parties each filed a reply on November 21, 2012 (R. Docs. 42; 44). Strand Management and Gulfwind Shipholdings filed a "response" to the Motions on November 13, 2012. (R. Doc. 31.)

**LAW AND ANALYSIS**

The instant Motions seek, *inter alia*, to stay proceedings in this Court pending the resolution of arbitration in London. For the following reasons, the Court grants the requested relief under 9 U.S.C. § 3 and stays all actions against Global Maritime and Sangamon Transportation. In the interest of judicial economy and convenience to the parties, the Court also stays all actions against the remaining Defendants—Strand Management and Gulfwind Shipholdings—pursuant to the Court's inherent power to manage its docket.

I.   <u>Law of Arbitration in General—Title 9</u>

The Court's power in this case to stay proceedings against Moving Parties derives from the interplay between two chapters in Title 9 of the United States Code. Chapter 1, commonly referred to as the Federal Arbitration Act ("FAA"), is a set of default rules designed "to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219–20 (1985). Chapter 2 implements the Convention on the Recognition of Foreign Arbitral Awards (the "Convention"), June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38, and seeks to "encourage the recognition and enforcement of commercial arbitration agreements in international contracts." *Scherk v. Alberto-Culver Co.*, 415 U.S. 506, 520 n.15 (1974). The parties do not dispute that the charter agreements in this case are governed by the

Convention.[1]

The Convention's implementing legislation incorporates the FAA to the extent that the two are not in conflict. *Todd v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd.*, 601 F.3d 329, 332 (5th Cir. 2010) (citing 9 U.S.C. § 208; *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 20 (2d Cir. 1997)). For example, since the Convention and its implementing legislation do not explicitly authorize staying litigation pending arbitration, parties must seek such relief under Section 3 of the FAA. *Todd*, 601 F.3d at 332. Accordingly, this Court looks to 9 U.S.C. § 3 in determining whether to issue the stay.

A. *9 U.S.C. § 3*

The Court first determines whether 9 U.S.C. § 3 is properly invoked. Next, the Court addresses whether Moving Parties have waived their right to arbitration. As the Court answers the first question affirmatively and the second question in the negative, the claims against Moving Parties are stayed.

i. *Applicability of 9 U.S.C. § 3*

"The Supreme Court has made it clear that the Federal Arbitration Act, 9 U.S.C. § 3, establishes a 'liberal policy favoring arbitration' and a 'strong federal policy in favor of enforcing

---

[1] *See* 9 U.S.C. § 202; *Beiser v. Weyler,* 284 F.3d 665, 666 n.2 (5th Cir. 2002) ("In order for an agreement to fall under the Convention, it must arise out of a commercial relationship. At least one of the parties to the agreement must not be a U.S. citizen, or, if the agreement is entirely between U.S. citizens, it must have some 'reasonable relation' with a foreign state.") (citations omitted).

5

arbitration agreements.'" *Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 392 (5th Cir. 2001) (quoting *Texaco Exploration and Prod. Co. v. AmClyde Engineered Prod. Co., Inc.*, 243 F.3d 906, 909 (5th Cir.2001)). Section 3 is mandatory in that it "leaves no place for the exercise of discretion by a district court." *Byrd*, 470 U.S. at 218.

A court decides a motion to stay under Section 3 in two steps. *Complaint of Hornbeck Offshore (1984) Corp. v. Coastal Carriers Corp.*, 981 F.2d 752, 754 (5th Cir. 1993). First, the court determines whether there is a written agreement to arbitrate. *Id.* Second, the court determines whether the issues raised are within the scope of that agreement. *Id.* With respect to the latter inquiry, the Fifth Circuit distinguishes between "broad" and "narrow" arbitration clauses. *See The Rice Co. (Suisse), S.A. v. Precious Flowers Ltd.*, 523 F.3d 528, 536 (5th Cir. 2008). "Broad arbitration clauses govern[] disputes that 'relate to' or 'are connected with' the contract" whereas narrow arbitration clauses "only require arbitration of disputes 'arising out of' the contract." *Pennzoil Exploration and Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998) (quoting *Tracer Research Corp. v. Nat'l Envtl. Svcs. Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994)). If the clause is broad, the action should be stayed. *Hornbeck*, 981 F.2d at 754 (citations omitted). On the other hand, if the clause is narrow, the court must determine whether it encompasses a particular dispute. *Id.* at 755.

Given the strong federal policy in favor of arbitration, this Court is mindful that any "doubts concerning the scope of an arbitration agreement should be resolved in favor of arbitration." *Safer*

6

v. Nelson Fin. Grp., Inc., 422 F.3d 289, 294 (5th Cir. 2005). Put differently, "arbitration should not be denied unless it can be said with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." Id. (quoting Motorola, 297 F.3d at 293).

The Court now applies these legal precepts to the case at bar. Clearly, the arbitration agreements are in writing. Thus, the Court must address whether the agreements are broad or narrow. Supreme Court and Fifth Circuit precedent strongly suggest, if not mandate, that this Court interpret the arbitration clauses as "broad." As discussed *supra*, the Cargill-Sangamon Transportation charter agreement calls for arbitration in London of "[a]ll disputes arising out of or relating to this contract." (R. Doc. 21, Ex. B.) In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 397–98 (1967), the Supreme Court labeled as "broad" a virtually identical clause requiring arbitration of "[a]ny controversy or claim arising out of or relating to this Agreement." *Accord Pennzoil*, 139 F.3d at 1067. The other three charter agreements in this case require London arbitration of "[a]ll disputes arising out of or under this contract." (*See* R. Doc. 21, Exs. F; C; D.) That these agreements use not only the phrase "arising out of" but also "under" suggests that the parties intended to arbitrate all disputes having a significant relationship to the charter agreements. *Cf. Pennzoil*, 139 F.3d at 1061.

Even were this Court to interpret the arbitration clauses as "narrow," the Court would still order a stay, because Plaintiffs' claims may fairly be interpreted to arise out of the charter

7

agreements. First, Plaintiffs' causes of action against all Defendants are clearly premised upon establishing a chain of liability though the various charter agreements. (*See* R. Doc. 1, ¶¶ 5–8; 11.) Second, assuming *arguendo* that these agreements are ambiguous, the Court cannot say with "positive assurance" that they are not susceptible of an interpretation that would warrant arbitration. Third, Plaintiffs do not dispute in their opposition memorandum that their claims are subject to arbitration under 9 U.S.C. § 3. Rather, Plaintiffs argue that Defendants have waived their right to arbitration.

    ii. *Waiver of Arbitration Rights*

Courts assess whether a party has waived its right to arbitration on a case-by-case basis. *Petroleum Pipe Americas Corp. v. Jindal Saw, LTD.*, 575 F.3d 476. 480 (5th Cir. 2009). "The court finds waiver 'when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party.'" *Id.* (quoting *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 576 (5th Cir.1991)). Since federal policy favors arbitration of disputes, the Fifth Circuit imposes "a strong presumption against finding a waiver of arbitration, and the party claiming that the right to arbitrate has been waived bears a heavy burden." *Republic Ins. Co. v. Paico Receivables, LLC*, 383 F.3d 341, 344 (5th Cir. 2004) (citing *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 326 (5th Cir.1999)). "That burden 'falls even more heavily' when the party seeking arbitration 'has included a demand for arbitration in its answer.'" *Keytrade USA, Inc. v. Ain Temouchent M/V*, 404 F.3d 891, 897 (5th Cir. 2005) (quoting *Steel Warehouse Co. v. Abalone Shipping Ltd. of Nicosai*, 141 F.3d 234,

8

238 (5th Cir.1998)). As Moving Parties both answered the Complaint with demands for arbitration (*see* R. Docs. 14 ¶4; 12 ¶20), Plaintiffs must overcome a particularly heavy presumption against waiver.

The Court first examines whether Global Maritime or Sangamon Transportation has participated so substantially in the litigation as to waive the right to arbitration. "To invoke the judicial process, a 'party must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration.'" *In re Mirant Corp.*, 613 F.3d 584, 589 (5th Cir. 2010) (quoting *Petroleum Pipe*, 575 F.3d at 480). Such overt acts may include the filing of dispositive motions and extensive participation in discovery. *See Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1159 (5th Cir.1986). The filing of a dispositive motion before attempting to arbitrate, however, "is easily distinguished from the scenario where a party demonstrates its preference to arbitrate by submitting a dispositive motion only *as an alternative* to a motion to compel arbitration." *In re Mirant Corp.*, 613 F.3d at 589–90 (emphasis added) (citations omitted). In the latter scenario, "there is no attempt to game the system by seeking a decision on the merits while keeping the arbitration option as a backup plan." *Id.* at 590 (footnote omitted).

Plaintiffs argue that Moving Parties have waived their right to arbitrate by engaging in discovery and participating in a settlement conference. Moving Parties counter that discovery has been limited essentially to document exchange and that no depositions have taken place.

9

The Court finds that Moving Parties have not invoked the judicial process substantially enough as to waive their right to arbitration. Although each Party has filed dispositive motions, such motions were filed contemporaneously and in the alternative with motions to stay pending arbitration. Moreover, the parties' participation in a settlement conference is "not inconsistent with an inclination to arbitrate and do[es] not preclude the exercise of a right to arbitration." *Walker*, 938 F.3d at 578 (citations omitted). Finally, the record reveals that only limited discovery has taken place. Courts have allowed such actions as those taken by Moving Parties as well as considerably more activity without finding waiver. *See Tenneco Resins, Inc. v. Davy Int'l, AG*, 770 F.2d 416, 420–21 (5th Cir. 1985) (collecting examples of acts that do not constitute substantial invocation of the judicial process).

As the Court finds that Plaintiffs have not substantially invoked the judicial process, it does not reach the issue of prejudice. *See Nicholas v KBR, Inc.*, 565 F.3d 904, 910 (5th Cir. 2009) ("*In addition* to invocation of the judicial process, the party opposing arbitration must demonstrate prejudice before we will find a waiver of the right to arbitrate.") (emphasis added); *Keytrade USA*, 404 F.3d at 897–98 (rejecting a waiver argument solely on the basis that the party seeking arbitration did not substantially participate in litigation).

II. <u>The Court's Inherent Power to Stay Proceedings</u>

Having granted the Motions to Stay filed by Global Maritime and Sangamon Transportation pursuant to 9 U.S.C. § 3, the Court uses its discretionary authority to stay all proceedings against

10

the remaining defendants, Gulfwind Shipholdings and Strand Management (collectively the "Non-Moving Parties").  It is undisputed that "[a] district court has inherent power 'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *United States v. Colomb*, 419 F.3d 292, 299 (5th Cir. 2005) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).  This inherent power includes "broad discretion to stay proceedings." *Clinton v. Jones*, 520 U.S. 681, 706–07 (1997) (citing *Landis*, 299 U.S. at 254). Nonetheless, because this authority is "largely unreviewable, it must not be abused." *Coastal (Bermuda) LTD. v. E.W. Saybolt & Co., Inc.*, 761 F.2d 198, 203 n.6 (5th Cir. 1985) (citations omitted). Therefore, in deciding whether to stay proceedings, a Court "must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254–55.  Although a court may only impose a stay under 9 U.S.C. § 3 upon motion of a party, a court may exercise its inherent power to stay proceedings *sua sponte*.  *See, e.g.*, *DePriest v. Harmer*, No. 1:10CV177–P–D, 2011 WL 2447673, at **2–4 (N.D. Miss. June 15, 2011); *McDonald v. Union Nat'l Life Ins. Co.*, 307 F. Supp. 2d 831, 835–36 (S.D. Miss. 2004); *Crown Cent. Petroleum Corp. v. Dep't of Energy*, 102 F.R.D. 95, 98 (D. Md. 1984); *City of New York v. Gutlove & Shirvint, Inc.*, No. 08–CV–1372 (CBA)(JMA), 2008 WL 4862697, at *1 (E.D. N.Y. Nov. 10, 2008).

Plaintiffs contend that even if this Court stays proceedings against Moving Parties, the claims against Gulfwind Shipholdings and Strand Management should remain pending. Specifically, Plaintiffs argue that Non-Moving Parties have filed what is essentially a motion to stay in the guise

of a response to the motions to stay filed by Moving Parties. Plaintiffs argue that such pre-trial motions are untimely under the Court's current scheduling order (*see* R. Docs. 16; 19) and should therefore be denied.

The Court agrees with Plaintiffs that the "response" filed by Non-Moving Parties is in actuality a motion to stay. Since the deadline for filing pre-trial motions has passed, Non-Moving Parties have "missed the boat."

Nonetheless, having stayed the claims against Moving Parties, the Court orders *sua sponte* that all remaining proceedings be stayed pending resolution of the London arbitration. The Court imposes this stay for two reasons. First, Plaintiffs assert identical causes of actions against each Defendant. (*See* R. Doc. 1 ¶¶ 5–8; 11.) Moreover, such claims share a common nucleus of underlying facts. (*Id.* at ¶¶ 9–12.) Resolving these common issues of law and fact in the London arbitration eliminates any possibility of conflicting decisions, conserves judicial resources, and is the most efficient way to adjudicate Plaintiffs' claims. Second, in addition to promoting judicial economy, a stay of all remaining claims is most convenient for all involved in the litigation. Indeed, requiring the parties themselves, their counsel, and fact and/or expert witnesses to participate in parallel proceedings in different Continents would impose substantial, and unnecessary, hardship.

**CONCLUSION**

For the reasons previously stated, the Motions to Stay are granted in part and denied in

part. This matter is stayed and administratively closed but may be reopened upon the motion of a party once arbitration has concluded. Global Maritime's Motion to Dismiss for Lack of Personal Jurisdiction, or in the Alternative for Failure to State a Claim, and Sangamon Transportation's Motion for Summary Judgment are denied without prejudice.

New Orleans, Louisiana, on this 30th day of January, 2013.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**